IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLEY ROSS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GLOBAL WINE COMPANY and JOHN DAVIS,<br><br>　　　　Defendants.<br>_____/ | No. C 09-06107 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 20) |

　　　Plaintiff Kimberley Ross brings claims against Defendants Global Wine Company and John Davis for sexual harassment and unlawful retaliation in violation of Title VII and California's Fair Employment and Housing Act (FEHA).  Defendants move for summary judgment or, in the alternative, partial summary judgment. Plaintiff opposes the motion.  The motion was heard on March 10, 2011.  Having considered oral argument and the papers submitted by the parties, the Court GRANTS Defendants' motion in part and DENIES it in part.

BACKGROUND

　　　In March, 2009, Global Wine retained Plaintiff to be a quality assurance (QA) manager.  John Davis, Global Wine's vice president of information technology, had recommended that Global Wine hire

1   her.  For three months, Plaintiff worked in this position as an
2   independent contractor; thereafter, Global Wine made her a salaried
3   employee.  In June, 2009, at the time she became a salaried QA
4   manager, "there were no substantial problems or issues regarding
5   plaintiff's performance."  Littler Decl. ¶ 3.
6       In August, 2009, Plaintiff complained to Davis about comments
7   he had made since she began her employment with Global Wine.  She
8   asserted that every "word out of his mouth was some form of the F
9   word."  Rogers Decl., Ex. 1, at 80:17-18.  She also objected to
10  Davis stating, at some unspecified time, that he was "nobody's
11  bitch" and that "we're going to put [another employee] in fishnet
12  stockings and crack the whip."  Id. at 81:11-13.  Plaintiff
13  believed that Davis made these comments to portray Jennifer Morris,
14  Global Wine's vice president of operations, "as a dominatrix."  Id.
15  at 108:1-2.  Plaintiff also complained that, after Morris became
16  pregnant, Davis referred to Morris by stating, "'Thar she blows.'"
17  Id. at 82:19.  Finally, at some unspecified time, Davis made a
18  comment regarding Plaintiff's menstrual period.  After Plaintiff
19  expressed her complaints to Davis, he ceased making the comments
20  she found objectionable.
21      On September 8, 2009, Plaintiff sent an email to Simon
22  Littler, Global Wine's president and chief executive officer, and
23  to Morris.  In it, she complained about overseeing a QA team,
24  apparently located in Vietnam, and noted that she disagreed with
25  Davis about who should create "test cases" for websites.  Davis
26  Decl., Ex. A, at 2.  Plaintiff also stated,
27      There have been issues between John and myself which stem
28                                  2

> from grossly derogatory comments to and about women, preferential treatment from him to one of IT's team member and now it's his, and I quote, "morbid fascination" with the Asian culture. This morbid fascination with the Asian culture is the only basis I can find for John wanting Dung to create test cases.

Id. Plaintiff suggested that Global Wine employ her son to perform this work, instead of the Vietnam team. Finally, Plaintiff stated,

> Much to John's credit, these on-going conversations I have been having with him about derogatory statements to and about women and preferential treatment amongst team members have proved to be very fruitful. John has corrected himself greatly in both these areas so I'm hoping that we can resolve this latest issue . . . .

Id. at 3.

After receiving the email, Littler investigated Plaintiff's objection to Davis's alleged "derogatory comments about women." Littler Decl. ¶ 11. He interviewed various staff members, and concluded that Plaintiff's complaint lacked merit. After Littler received the email, he and Davis discussed Plaintiff's continued employment. Littler also met with Morris. Both agreed that "there was no basis" for Plaintiff's complaint concerning "sexual harassment" and, "in terms of the business and the ongoing work relationship between John Davis and Ms. Ross that it was an untenable situation that we couldn't afford to deal with as a business." Rogers Decl., Ex. 2, Littler Depo. 74:1-7.

On September 10, 2009, Plaintiff was discharged. According to Littler, Plaintiff was fired because of her poor job performance. Plaintiff testified that, prior to her firing, she did not have any conversations with her superiors regarding her job performance, nor did she receive any performance evaluations.

3

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that

4

> the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

5

DISCUSSION

I.  Sexual Harassment Claims

Plaintiff brings sexual harassment claims under Title VII and the FEHA.

Under Title VII, a plaintiff may prove sexual harassment by demonstrating that an employer has created a hostile or abusive work environment. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65-67 (1986).  To prevail on a hostile workplace claim premised on sex, a plaintiff must show:  (1) that he or she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. EEOC v. Prospect Airport Servs., Inc., 621 F.3d 991, 997 (9th Cir. 2010).  A plaintiff must show that the work environment was abusive from both a subjective and an objective point of view. Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005).  Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics as the plaintiff. Id.  Although the "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not alter the employee's terms and conditions of employment sufficiently to create a hostile work environment, "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,'" such an environment exists. Meritor, 477 U.S. at 65, 67.  Neither "simple teasing," "offhand comments," nor "isolated incidents" alone constitute a hostile work environment. Faragher v. City of Boca

6

Raton, 524 U.S. 775, 788 (1998).  To determine whether "a working environment is objectively abusive," a fact finder may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Prospect, 621 F.3d at 999 (citation and internal quotation marks omitted).

Under the FEHA, an "employer is strictly liable for harassment committed by its agents or supervisors . . . ."  Jones v. Dep't of Corr. & Rehab., 152 Cal. App. 4th 1367, 1377 (2007).

Defendants argue primarily that the conduct of which Plaintiff complains was not sufficiently severe or pervasive to support a claim for sexual harassment.  Plaintiff's sexual harassment claim appears to be based on: (1) Davis's use of variations on "the F word;" (2) his statement that he is "nobody's bitch;" (3) his comment that they were going to put another employee in "fishnet stockings and crack the whip;" (4) his use of the phrase "Thar she blows" to refer to Morris after she became pregnant; and (5) his complaint about Plaintiff's menstrual period.[1]  However, Plaintiff does not offer evidence concerning when and with what frequency Davis made these comments.  Further, Plaintiff does not offer evidence that these comments interfered with the performance of her

---

[1] Plaintiff does not respond specifically to Defendants' argument that Davis's conduct was not sufficiently severe or pervasive.  Instead, she states that she was subjected to "a pervasive sexually hostile environment" and cites a block of pages from her deposition.  Opp'n 4.  This is not sufficient.  Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.")

job. Instead, she points to instances in which she felt that Davis was hostile toward her. However, Plaintiff admits that these occasions did not involve sexual harassment, but rather hostility. See Rogers Decl., Ex. 1, Ross Depo. 97:23-98:1.

Plaintiff acknowledges that Davis ceased making inappropriate comments after she complained. She argues, however, that his hostility toward her thereafter also supports her sexual harassment claim on the theory that he "drove her out of the company because she complained" about sexual harassment. Opp'n 5. This conduct is not relevant to her claim for sexual harassment, which requires conduct of a sexual nature. If relevant at all, this alleged conduct pertains to Plaintiff's retaliation claim.

Plaintiff does not create a genuine issue of material fact as to whether she was subjected to severe or pervasive conduct of a sexual nature sufficient to support her sexual harassment claims. Accordingly, Defendants' motion is granted as to Plaintiff's sexual harassment claims under Title VII and the FEHA.

II. Retaliation Claims

Claims for retaliation under Title VII and the FEHA are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lam v. Univ. Of Hawai'i, 40 F.3d 1551, 1559 n.11 (9th Cir. 1994); Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To establish a prima facie case of retaliation, a plaintiff must "show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."

1  Yanowitz, 36 Cal. 4th at 1041.  Once a plaintiff establishes a
2  prima facie case, a presumption of retaliatory intent arises.  See
3  id. at 1042.  To overcome this presumption, the defendant must come
4  forward with a legitimate, non-retaliatory reason for the
5  employment decision.  Id.  If the defendant provides that
6  explanation, the presumption disappears and the plaintiff must
7  demonstrate that the defendant acted with retaliatory intent.  See
8  id.

To survive summary judgment, a plaintiff must then introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for retaliation.  A plaintiff may rely on the same evidence used to establish a prima facie case or put forth additional evidence.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994).  However, "in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of [retaliation] under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact."  Wallis, 26 F.3d at 890.

Plaintiffs can provide additional evidence of "pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful [retaliation] more likely motivated the employer."  Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (citation and internal quotation marks omitted).  When plaintiffs present indirect evidence that the

proffered explanation is a pretext for retaliation, "'that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'" EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)). When plaintiffs proffer direct evidence that the defendant's explanation is a pretext for retaliation, "very little evidence" is required to avoid summary judgment. See Boeing, 577 F.3d at 1049.

Defendants do not dispute that Plaintiff engaged in protected conduct or that she was subjected to an adverse employment action. Instead, Defendants argue that she fails to proffer evidence that supports a causal connection between the two. However, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002). Here, Plaintiff complained of sexual harassment and was discharged two days later. Further, Littler testified that, after determining Plaintiff's complaint lacked merit, he and Morris decided to terminate Plaintiff's employment. A jury could reasonably conclude that Plaintiff's protected activity precipitated her discharge. Thus, Plaintiff makes out her prima facie case.

Defendants assert that Plaintiff was discharged because of her poor job performance. Defendants maintain that, by mid-August, 2009, management had decided that Plaintiff "should be terminated in the next few weeks if her attitude and performance did not immediately improve dramatically." Littler Decl. ¶ 8. However, there is sufficient evidence from which a jury could infer that

10

this reason was pretextual.  First, there is direct evidence that Plaintiff's complaint led to her discharge.  As noted above, after Littler concluded that the complaint was meritless, he decided to fire Plaintiff.  This direct evidence is sufficient to satisfy Plaintiff's burden at summary judgment.  There is also indirect evidence.  Plaintiff testified that she was never informed that she was performing her job poorly.  She also testified that she did not receive any performance evaluations from her supervisors.  Construed in her favor, this evidence suggests that Defendants' reason was false.  Davis contests Plaintiff's assertion that she was not told she was not performing her job competently.  He asserts that, on various unspecified occasions in July and August, 2009, he met with Plaintiff to discuss with her what he believed to be deficiencies in her work.  Although there is conflicting evidence as to whether Plaintiff was notified of her purported poor job performance, this is a factual question to be resolved by a jury.

Accordingly, summary judgment is denied on Plaintiff's retaliation claims under Title VII and the FEHA.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  (Docket No. 20.) Summary judgment is granted in favor of Defendants on Plaintiff's sexual harassment claims under Title VII and the FEHA.  In all other respects, Defendants' motion is DENIED.

To the extent that the Court relied on evidence to which Plaintiff objected, those objections are OVERRULED as moot.

11

The parties have been referred to Magistrate Judge Bernard Zimmerman for a settlement conference. Per Judge Zimmerman's Order of March 14, 2011, a settlement conference will be held on April 22, 2011 at 9:00 a.m.

A final pretrial conference is set for May 3, 2011 at 2:00 p.m. A seven-day jury trial is scheduled to begin on May 31, 2011 at 8:30 a.m.

IT IS SO ORDERED.

Dated: 3/15/2011

CLAUDIA WILKEN
United States District Judge